Filed 3/30/22  P. v. Storment CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

BRIAN STORMENT,

    Defendant and Appellant.

</td><td>

F080405

(Super. Ct. No. 1450917)


**OPINION**

</td></tr>
</table>

<u>**THE COURT**</u>[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Thomas D. Zeff, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Catherine Chatman, and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Detjen, J. and Snauffer, J.

<h1 style="text-align:center">INTRODUCTION</h1>

In 2018, petitioner Brian Storment pled no contest to the second degree murder of 14-year-old J.V.[1]  (Pen. Code,[2] § 187, subd. (a).)  The trial court sentenced petitioner to a term of 15 years to life.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The trial court denied the petition on the ground petitioner was not convicted of felony murder or murder under a natural and probable consequences theory, and thus was ineligible for resentencing.

On appeal, petitioner asserts he established a prima facie claim for resentencing and the court therefore erred in denying the petition without issuing an order to show cause or holding an evidentiary hearing.  We agree and reverse.

<h2 style="text-align:center">FACTUAL AND PROCEDURAL HISTORY</h2>

**I.     Criminal Prosecution**

On October 14, 2012, Jose T., Aurelio T., Jesus C., and J.V. were shot at while standing outside a residence on Conant Avenue in Modesto.  Jose was shot in the ankle and survived.  J.V. was shot in the left arm above the elbow, with the bullet proceeding into his left chest and heart, causing his death.  Jesus and Aurelio were not hit by gunfire.[3]

On October 24, 2012, the Stanislaus County District Attorney charged petitioner, along with Santos Joseph Garcia II and Jeremy Anthony Romero, with the premeditated murder of J.V. (§ 187, subd. (a); count I), and the premeditated attempted murder of Jose

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials.  No disrespect is intended.

[2] Undesignated statutory references are to the Penal Code.

[3] Facts taken from the preliminary hearing transcript are recited to provide context for the parties' arguments.  For purposes of this appeal, we need not, and do not, determine whether any testimony from the preliminary hearing would be admissible at an evidentiary hearing.  (§ 1170.95, subd. (d)(3).)

(§§ 187, subd. (a), 664; count II).  As to both counts, the prosecutor alleged gang and firearm enhancements.  (§§ 186.22, subd. (b)(1)(a), 12022.53, subds. (d), (e)(1).)

A.      Preliminary Hearing Testimony

The preliminary hearing was conducted over multiple dates in 2013 and 2017.  We briefly summarize testimony relevant to this appeal.

Jose testified that he was living at the Conant Avenue address on October 14, 2012.  On that date, there was a birthday party at the house and Jose was smoking marijuana.  Jose was shot in his right foot while standing in the driveway of the Conant house with Aurelio and J.V.  Jose did not recall the circumstances surrounding the shooting and did not know who shot him.  He did not recall speaking with a detective.  He denied being a Sureño gang member, affiliate, or drop out.

Modesto Police Detective M. Hicks testified that he spoke with Jose at approximately 2:00 a.m. on October 15, 2012, at the police department.  Jose reported that he was smoking marijuana and leaning against an outbuilding facing toward Conant at approximately 10:30 p.m. on October 14, 2012, when he observed two people walking southbound on Conant directly toward his group.  One individual was wearing a gray hooded sweatshirt and black pants, and the other was also wearing a dark-colored hooded sweatshirt.  The individuals crossed the street and pulled out semiautomatic handguns, one being chrome and the other being black, and fired at the front of the residence.  Jose was shot in the ankle and sought cover under a truck parked in front of him.  Jose believed 10 shots were fired, and it sounded like they were from two different caliber guns.  He then saw the shooters running away northbound on Conant.  Jose told Hicks that he had been a Sureño dropout for approximately four years, which he believed may have motivated the shooting.  Jose noticed that Norteño gang members routinely walked by his residence, but his contacts with them had been cordial and he had never had any problems.  He did not believe any Sureños knew where he lived.  Hicks explained that the

3.

Norteño gang, and specifically the Highway Village sect, dominated the area where the shooting took place.

Jesus testified he was friends with Jose and was present outside the Conant house at the time of the shooting. He had been smoking marijuana that night, beginning approximately 10 minutes prior to the shooting. Jesus saw three men wearing gray "hoodies" approaching from the corner. One of the men pulled out a handgun and started shooting. Jesus jumped in his truck to take cover and got out of the truck once the shooting stopped. Everyone else "scattered." Once Jesus determined he was uninjured, he left. Jesus spoke with a detective the following morning. He did not recall telling the detective he saw only two males. He denied being a "gangster."

Christopher A. testified that he lived across from Garcia in an apartment near the scene of the shooting. Christopher identified petitioner, Romero, and Garcia as individuals he gave guns to on the night of October 14, 2012.

During the course of the preliminary hearing, Garcia entered into an agreement with the prosecution to testify in relation to the case. Garcia testified that he, Romero, and petitioner were involved in the shooting at the Conant house. At the time of the shooting, Garcia was a Norteño gang member from the Highway Village sect and functioned as a "chief" of that sect.[4] Romero was a Norteño from the North Side sect. Petitioner was a Norteño in the Highway Village sect. Petitioner was jumped into the

---

[4] Garcia was qualified as an expert on the Highway Village Norteños. He testified regarding the membership of the Highway Village sect, their identifying characteristics, and their criminal activities. He opined that a Highway Village Norteño would take action against a Sureño gang member that moved into his turf, and the intent of such action would be to kill the Sureño. To establish status in the gang, an individual has to "put in work" by selling drugs or terrorizing the neighborhood to demonstrate that the gang owns the turf. Killing a "Scrap" or shooting at a "Scrap house" would also give a young person significant status in the gang. Garcia explained that the term "Scrap" is used to describe Sureño gang members.

gang approximately one to two months before the shooting. Highway Village is Norteño territory and the Highway Village Norteños ran the neighborhood.

On the day of the shooting, Garcia and petitioner drove past the Conant house and saw a party going on and noticed the Scraps that lived there were outside. Garcia and petitioner then met up with Romero, who had also seen the Scraps at the Conant house. Garcia, Romero, and petitioner went to Garcia's "dope house" in Highway Village and came up with a plan to go and shoot at the Scraps, with the intent to kill them. Garcia's role in the plan was to be the getaway driver.

Petitioner and Romero went to get a gun at Christopher's apartment, which was in the same complex as Garcia's dope house. Garcia described Christopher as a "local crackhead" who would store guns for Garcia and others. The guns were "the neighborhood's guns" and did not belong to Garcia specifically. Petitioner came back from Christopher's apartment with a black and silver gun. Romero was already carrying a black .45-caliber gun, which belonged to the Highway Village gang. Both were semiautomatic handguns. Garcia did not have a gun.

Garcia drove and parked at a corner near an alley that led "pretty much" to the front of the Conant house. Petitioner and Romero walked toward the alley and Garcia lost sight of them. Garcia then heard "a lot" of gun shots and made a U-turn so the passenger doors of the car would be facing the alleyway.[5] Petitioner and Romero returned to the car. Each had a gun in their hand when they got into the car and they spoke about the shooting.

Garcia drove back to the apartments where Christopher was waiting for them. Garcia handed Christopher the guns and told him to put them away. Garcia then dropped

---

[5] Garcia acknowledged that he previously told an investigator that he did not hear the shots because there was music playing in his car. Garcia testified he made this false statement because he was scared.

petitioner off at his house. A few days after the shooting, Garcia asked Christopher if he still had the guns. Eventually, Garcia sent someone to retrieve the guns.

Detective R. Gumm testified that he was involved in the investigation of the shooting. He was qualified as an expert on Hispanic gangs in the Stanislaus County area. He testified to general information regarding the Norteños and their rivalry with the Sureños. He also testified to details regarding the Highway Village sect. He testified that he was very familiar with Jose and Aurelio, and knew them to be South Side Trece Sureño gang members. He acknowledged that Jose and Aurelio reported dropping out from the gang. Gumm opined that petitioner, Romero, and Garcia were active participants in the Norteño criminal street gang. He was not able to determine whether petitioner belonged to a specific sect. He testified that Highway Village is a Norteño area and opined the shooting was gang motivated based on the perception that residents of the Conant house were Sureño gang members.

Hicks was recalled and testified that shell casings from two different handguns were collected at the scene of the shooting. Video and audio surveillance indicated 16 shots had been fired. The video showed two individuals walking southbound on the west side of Conant, one of whom was wearing a gray hooded sweatshirt and the other wearing a darker-colored sweatshirt. The individuals turned eastbound directly toward the Conant residence and disappeared from view right before the shots were fired. The video subsequently showed two individuals fleeing north on Conant.

Hicks testified that Garcia eventually arranged for the firearms purportedly used in the shooting to be turned over to law enforcement. One of the weapons turned over was a .40-caliber chrome and black Taurus semiautomatic handgun. The other was a .45-caliber black Springfield XD model semiautomatic handgun. Shell casings collected at the scene of the shooting matched the firearms turned over by Garcia. Police recovered seven .40-caliber casings and nine .45-caliber casings at the scene.

Hicks interviewed petitioner on October 22, 2012, after he was arrested. Petitioner initially denied any involvement in the shooting and any knowledge of Romero or Garcia. Petitioner later admitted that he met up with Romero on the day of the shooting and Romero told petitioner he had some problems with some people on Conant. Romero gave petitioner a .40-caliber gun that was silver in color with a black handle. They walked to Conant and traveled westbound on the west side of the street until they got to the residence. Petitioner reported that they crossed the street and Romero then stepped out in front of him and began firing. Petitioner believed Romero fired at least 10 times and petitioner himself fired at least twice. Afterward, they fled the area in a northbound direction. They were picked up by Garcia and dropped the guns off with Christopher, and petitioner was later driven back to his own house. A couple days later, Romero came to petitioner's house and picked up the clothing petitioner wore on the day of the shooting, which included a black hooded sweatshirt and black jeans. Petitioner reported that Romero was wearing a gray hooded sweatshirt at the time of the shooting.

B. Plea

On July 20, 2017, the Stanislaus County District Attorney filed an information charging petitioner with the first degree murder of J.V. (§ 187, subd. (a); count I), three counts of attempted murder as to Jose, Jesus, and Aurelio (§§ 187, 664; counts II-IV), and active participation in a criminal street gang (§ 186.22, subd. (a); count V). As to counts I through IV, the information alleged (1) petitioner acted with premeditation, (2) petitioner personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and (3) a principal in the offense personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)). As to all five counts, the information alleged petitioner committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)).

On March 7, 2018, petitioner pled no contest to second degree murder on count I pursuant to *People v. West* (1970) 3 Cal.3d 595. The parties stipulated that the

preliminary hearing transcript provided a factual basis for the plea. The remaining charges and enhancement allegations were dismissed. On April 9, 2018, the trial court sentenced petitioner to a term of 15 years to life.

On February 19, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95. In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he pled guilty or no contest to first or second degree murder in lieu of going to trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

On April 16, 2019, the People filed a motion to dismiss the petition on the ground Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill No. 1437) is unconstitutional. Therein, the People also argued petitioner was ineligible for resentencing because (1) he was charged with premeditated murder, and (2) he was a major participant in the underlying felony and acted with reckless indifference to human life.

On May 17, 2019, the court appointed counsel to represent petitioner.

On September 19, 2019, petitioner filed a response to the motion to dismiss and therein also addressed the People's arguments on the merits.

On November 13, 2019, the court denied the motion to dismiss the petition and found Senate Bill No. 1437 constitutional. However, the court determined petitioner failed to make a prima facie showing he was entitled to resentencing because he was charged with and held to answer on a charge of murder with premeditation. Additionally, the court noted petitioner entered a plea to murder with malice aforethought. Finally, the court noted that the evidence set forth in the preliminary hearing transcript, which constituted the factual basis for the plea, did not "contain any allegations for murder based on a felony murder or the natural and probable consequences theory." Accordingly, the court denied the petition without issuing an order to show cause.

This timely appeal followed.

## DISCUSSION

### I. Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[6] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice

---

[6] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1170.95, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making

this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1170.95, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.     The Trial Court Erred in Failing to Issue an Order to Show Cause

The People argue the trial court correctly determined petitioner is ineligible for resentencing because the preliminary hearing transcript establishes petitioner was not

convicted of felony murder or murder under a natural and probable consequences theory. We disagree.

At the prima facie stage, the court may deny a petition if the petitioner is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) In the plea context, a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; or (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by Senate Bill No. 1437. (See § 1170.95, subd. (a)(1)-(3).)

Here, petitioner pled no contest to second degree murder. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 232 (*Rivera*) [a conviction of second degree murder does not categorically bar a petition under § 1170.95].) Furthermore, although the information alleged the murder was committed intentionally, deliberately, and with premeditation, petitioner did not admit this allegation. Instead, petitioner pled no contest to a generic charge of murder in the second degree, which did not specify or exclude any particular theory of murder. (See *Rivera*, at p. 233 [generically charging murder did not preclude prosecution based on any particular theory of murder]; see also *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978 [same].) In entering his plea, petitioner did not admit to or stipulate to any particular theory of murder. Neither the charge nor the plea excludes petitioner from resentencing eligibility as a matter of law.

Likewise, the preliminary hearing transcript does not establish petitioner is ineligible for resentencing as a matter of law. Courts of Appeal are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing under section 1170.95. In *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 (*Nguyen*), the court found the preliminary hearing transcript

dispositive. There, Nguyen pled guilty to second degree murder and stipulated to the preliminary hearing transcript and police reports as the factual basis for the plea. (*Id.* at p. 1161.) Nguyen subsequently petitioned for resentencing pursuant to section 1170.95. The People opposed the petition on the ground " '[s]ufficient evidence presented at the preliminary hearing' " demonstrated Nguyen acted with malice aforethought as an aider and abettor to the murder. The People further argued that they had not argued the applicability of the natural and probable consequences doctrine and the record did not support a finding the court considered that theory in holding Nguyen to answer. (*Nguyen*, at p. 1161.) The trial court agreed with the People's arguments and denied the petition. (*Id.* at p. 1163.) The Court of Appeal affirmed, noting:

> "If [the petitioner] had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [the petitioner] would be unable to make a prima facie showing that he is entitled to relief under section 1170.95. [Citation.] Nguyen's murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor." (*Id.* at p. 1167.)

In *Rivera*, the court declined to follow *Nguyen*. (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.) Rivera pled no contest to second degree murder and stipulated to a grand jury transcript as the factual basis of the plea. (*Id.* at pp. 225-226.) He subsequently filed a petition for resentencing pursuant to section 1170.95. The People argued Rivera failed to make a prima facie showing of eligibility because the record, including the transcript of the grand jury proceedings, established the People had proceeded on a single theory of liability that Rivera possessed malice aforethought jointly with a fellow gang member involved in the shooting. (*Rivera*, at p. 226.) The trial court declined to take judicial notice of the grand jury transcript, but nonetheless denied the petition on the ground Rivera's plea to " 'second degree murder with malice' " excluded him from resentencing

13.

eligibility. (*Id.* at pp. 226-227.) The Court of Appeal rejected this reasoning and then considered the People's alternative argument that Rivera nonetheless was ineligible for resentencing based on the grand jury transcript. (*Id.* at pp. 231-235.)

The court determined the transcript was not dispositive, noting:

"[T]here is no basis on which to infer that Rivera admitted to acting with actual malice. His stipulation to the grand jury transcript as the factual basis for his plea does not establish such an admission. Under section 1192.5, a trial court taking a plea must make 'an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea.' 'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges. [Citation.] It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does the trial court have to be convinced of [the] defendant's guilt.' [Citation.] In addition, '[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document.' [Citation.] Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[] a binding admission for all purposes.' [Citations.] For our purposes, this means that Rivera did not admit to the truth of any of the evidence presented to the grand jury, and that evidence therefore cannot be used to demonstrate that he admitted to acting with actual malice. Thus, the trial court properly declined to rely on this evidence in making its ruling." (*Rivera*, *supra*, 62 Cal.App.5th at p. 235.)

In specifically declining to follow *Nguyen*, the court noted, "The fact that a petitioner was not 'convicted of felony murder or murder under a natural and probable consequences theory' [citation] at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory." (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.) However, the record of conviction involving a plea "will generally lack any comparable assurance of the basis for the conviction." (*Id.* at p. 237.) This is because a magistrate or grand jury is not required to be convinced beyond a reasonable doubt that the defendant committed every element of the offense, but rather " ' " 'must be convinced only of such a state of facts as would lead a [person] of ordinary caution or prudence to

14.

believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction." ' " ' " (*Ibid*.) Furthermore, the instructions to a grand jury "do not fix the theories on which a case may be prosecuted or establish the basis for a postindictment plea. A prosecutor has 'no duty to instruct the grand jury sua sponte on lesser included offenses' because 'it "is not the province of the [g]rand [j]ury to determine the degree of murder." ' . . . Thus, a grand jury's return of an indictment after being instructed on only certain theories of murder does not reflect a determination that those are the only viable theories available, much less that murder has been proven under them beyond a reasonable doubt." (*Ibid.*) Finally, the court noted Rivera had filed a facially sufficient petition and offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under a natural and probable consequences theory, thereby creating a factual dispute that could not be resolved at the prima facie stage. (*Id.* at p. 239.)

Since *Nguyen* and *Rivera* were decided, our Supreme Court has emphasized that the prima facie review is limited, and "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Furthermore, at the prima facie stage, the court is prohibited from engaging in " 'factfinding involving the weighing of the evidence or the exercise of discretion.' " (*Ibid*.) Instead, the court must " ' "take[] [the] petitioner's factual allegations as true" ' " and make a " ' "preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id.* at p. 971.) Only where the record of conviction contains facts *conclusively* refuting the allegations in the petition may the court make credibility determinations adverse to the petitioner. (*Ibid.*; accord, *People v. Duchine* (2021) 60 Cal.App.5th 798, 815; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, abrogated on another ground by *Lewis*, at pp. 962-963.) Additionally, it is now well-settled that the prima facie determination is a question of law. (*Lewis*, at p. 966.) To the extent *Nguyen*

15.

suggests a section 1170.95 petition may be denied based on sufficient or substantial evidence to support a conclusion the petitioner was convicted under a valid theory, it is contrary to *Lewis*. (*Nguyen*, *supra*, 53 Cal.App.5th at pp. 1167-1168; see *Lewis*, at p. 966.) Accordingly, like the court in *Rivera*, we decline to follow *Nguyen.* (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.)

We therefore conclude the preliminary hearing transcript does not establish petitioner's ineligibility for resentencing as a matter of law. At the preliminary hearing, testimony was presented that suggested petitioner was one of two individuals who shot at the group in front of the Conant house, killing J.V. This testimony, if credited, may be sufficient to establish as a factual matter that petitioner directly aided and abetted in the murder, thus excluding him from resentencing eligibility.[7] However, petitioner did not admit the truth of this testimony and his stipulation that the transcript provided a factual basis for the plea is not a " 'binding admission for all purposes.' " (*Rivera*, *supra*, 62 Cal.App.5th at p. 235.) Crediting this testimony therefore would require judicial factfinding, which is impermissible at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) Absent some further admission or stipulation, the testimony does not conclusively establish as a matter of law that petitioner was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life. The testimony cannot exclude the possibility that petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437.

---

[7] Significantly, section 1170.95 recently was amended to exclude from the court's consideration "hearsay evidence that was admitted at a preliminary hearing pursuant to subdivision (b) of Section 872 . . . unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1170.95, subd. (d)(3).) Petitioner has not challenged the admissibility of specific testimony from the preliminary hearing under this provision. Regardless, we need not resolve any questions concerning admissibility of the testimony because, even if properly considered, the testimony does not establish petitioner's ineligibility for resentencing as a matter of law.

In sum, petitioner adequately alleged a prima facie claim for relief and the record does not rebut his allegations as a matter of law. The court was required to issue an order to show cause (§ 1170.95, subd. (c)), and to hold a hearing at which the prosecution bears the burden of proving petitioner's ineligibility for resentencing beyond a reasonable doubt, unless such hearing is waived (§ 1170.95, subd. (d)). In failing to do so, the court erred. Accordingly, we must reverse and remand for further proceedings. We express no opinion on the merits of the petition.

## DISPOSITION

The November 13, 2019 order denying petitioner's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as required under section 1170.95, subdivision (d), in light of the principles set forth herein.